Good morning, Your Honors. Nicholas Markey on behalf of the petitioner, Miguel Romero-Gonzalez, may it please the Court. Your Honors, this is a fairly straightforward case with some twists on the road as it has arrived at this Court. This case involves Section 245I of the INA regarding adjustment of status. And the sole issue before the immigration judge was whether Mr. Romero-Gonzalez established that he had been in the United States in December 21, 2000. In order to be eligible for 245I, he has to show that he had a grandfathered I-130 petition, that he was here in the United States, and that he complied with the statutory requirements. At the time of the hearing, the immigration judge found that he did not satisfy the legal presence in the United States on December 21, 2000. Now, did the IJ find that he was not present in the United States on December 21, or did he find that he had failed to prove that he was in the United States on December 21? That's the question, Your Honors. I think what he did was he failed to say he couldn't prove it, but he didn't establish that he wasn't here. What came up... Ask me what did the IJ say. The IJ stated that he failed to prove that he was in the United States for a requisite statutory period of time. Well, that was his burden, wasn't it? It was his burden, and we say he... Well, if he failed to prove it, then he wasn't here for legal purposes. I think the IJ should have said he wasn't here. He says he failed to... Excuse me? He should have held that he was not in the United States in December 2000. I don't understand that point. If he doesn't support his burden of demonstrating he was in the United States, he loses, doesn't he? But we're saying he did support it. He testified... Well, but that's a different question. It's not that the IJ didn't say he was not here. It's that did he prove it or didn't he prove it? That's correct, and we're saying he did prove it. I know that. I understand that, of course. But that's not what you were saying a couple of seconds ago. I apologize, Your Honor. It's okay. But the whole point comes down to the IJ relied on the statements, allegedly inconsistent statements of Mr. Romero and his wife. He also further relied on the fact that Mr. Romero hadn't provided documentary evidence. Documentary evidence that he was here in December 2000, i.e. bank statements, rent receipts, and things like this. Is this pre- or post-real ID? I couldn't quite tell. It sort of looked iffy. That's another issue. This is pre-real ID, and the government concedes that the BIA applied post-real ID in the burden of proof. Our position is because the government concedes that this is a real ID, and that the BIA ruled that they applied the real ID standard, therefore this case should be remanded directly on that point. And I cite to, I think it was COVAC v. INS, 407 Fed 2nd, 102, which states that if an administrative agency relies on an erroneous standard, that decision will not stand, and it bases itself on a Supreme Court case. Let's talk about what he actually – was he consistent or wasn't he? Okay? Now, he says, well, when I was before the – what's it called, that asylum officer? The adjudicator, yes, sir. Exactly. When I was in front of that person, there's no question what I told him was, quote, wrong, close quote, or at least if we listen to the person who actually testified, although not from recent memory, says – he said, I don't have a clue when I left in December. I just don't know. I have no idea, and he tried to pin it down, I don't have any idea when I left. The first time the immigration folks are told, oh, well, it was a specific date for a specific time for a specific reason, was after they got the decision, and the decision said, I take it, you know, you had to be here on such and such a date, and he says, oops, of course we were there on that date. And the – as trial people do sometimes, that's just too pat. Where do we go with that? Well, I guess I would agree with the court. The adjudicator's decision came down saying he didn't meet the December 2000 statutory requirement. The client says, well, my wife and I, we talked about that after we left the interview and we didn't understand the question. Then we go into the hearing where he testifies further that he was here, that he moved in from Walla Walla with his family to Pasco in December 2000. He supposedly stayed for the period of time through Christmas and left shortly after. But the problem that they're pointing out is that, guess what? He gets all this information after the ruling. Before the ruling, when allegedly driving home, they said, you know, maybe we gave them the wrong dates. They don't tell the immigration folks that. Now they've got an excuse or reason. They say we talked to somebody or other and he said not to worry. But the fact is they did not come forward with anything else until they learned, you know, there's a magic date here. And then all of a sudden they've got a great story about the Christmas time. And did you give gifts? Well, I don't know if I gave any gifts. Do you have any receipts at all? No receipts, nothing. I can see the court's concerned about that. But the problem is this. These people file it pro se with the help of a notario. Aren't given what is required for the filing of it. This notario just fills it out or this person fills it out, wasn't an attorney, and submits it without the statutory requirement. Had he had proper guidance, he probably could have satisfied that. But he didn't and he don't. And the question is could a rational trier of fact decide that this just doesn't wash? Not could we decide it because it seems very interesting, but could a rational trier of fact looking at this record say, uh-uh, I don't think so. If we didn't have the supporting documentation, limited as it is, and we didn't have the testimony of the spouse, I would agree that a rational trier of fact, if it was subjected just to his application saying you were denied by the examiner and they came back later on and said, well, I was here, but they didn't supply what documentation they could, then a rational trier of fact could. But in this case. Did he move to reopen? Reopen. The hearing? Because he now understood what the problem was and he had the evidence? The decision was made by the agency. USCIS denied the application for adjustment of status. They then referred it to the immigration judge. When it gets to the immigration judge, the immigration judge renews the application as a whole. So by the time that it got to the attorney, the period for filing for reopening would have been probably gone. But number two, you have a better, in my opinion, you oftentimes have a better chance to address these issues at the time of the hearing with the IJ because he can hear testimony, you can submit additional documentation. If you were to file a motion to reopen with the service or the government, USCIS, they can review the evidence and still say no. So did he reopen before the agency? No, but he had a full merits hearing before the IJ, and that's where he did address those issues with his wife's testimony. If nothing further, I'll. Okay. Thank you. Ms. Browning. May it please the Court. My name is Rachel Browning, and I represent the Attorney General and the Respondent. In this case, the record evidence simply does not compel the conclusion that the petitioner met his burden of establishing eligibility for adjustment of status under 245I. The petitioner failed to provide either credible testimony or objective documentary evidence sufficient to prove that he was physically present in the United States on December 21, 2000, and that's a clear requirement of this form of relief. So I want to make sure that I understand what the evidence that was before the agency. So when the officer takes the I-45 statement, we have his handwritten notes. Yes. We don't, the officer didn't recall, he'd interviewed 2,000 to 3,000 people, and he didn't recall Mr. Romero specifically. Correct. So all he could do was talk about sort of his practice. He talked about standard procedure, Your Honor, about what an adjudicating officer does in those circumstances. And what did he say about what he asked about dates? So, for example, he's written in hand, in U.S. until 12-2000, returning or returned to Mexico for six months. Now, I don't know what that's in response to. Did he say, were you here on December 21st? Or did he say, how long were you here? And if Mr. Romero says, I was here until December sometime and I left for Mexico, and the officer writes down here until 12-2000, that doesn't tell us anything about what Mr. Romero thought or didn't think about what day in Mexico he was here. It turns out that the date is very important, and Mr. Romero apparently didn't realize that, and we don't know whether the officer asked him that, do we? We don't. The record does not make that clear. Well, didn't the officer say, I, when I get that kind of answer, I ask for more specification. Well, he did, Your Honor. Tell me, was it, tell me anything that will give you a key on what date it was that he left. Isn't that what the officer said? The officer said if, that's correct, Your Honor, the officer said that if an applicant is unclear about a particular date, that he tries to find, if a person can't give a specific date, that he tries to get a ballpark, you know, figure. Was it the beginning of the month, middle, the end? And petitioner's own testimony indicates that the officer did ask him that as a way of eliciting, giving him something about when it was, you know, was it possible that you were here and when. And the petitioner said he could only give him month and year. And so based on that statement, the officer concluded that the petitioner had left sometime in December and didn't come back to the United States until June of 2001. Based on that, the factual allegations in the NTA were that on or about December 1st, 2000, the petitioner left and he admitted those factual allegations. And then later, not until he gets into further testimony with the IJ, does he suddenly recall that in fact they were here. Would he have known at that point that December 21st was a key date? They should have been on notice from the time that they applied for this form of relief. Yeah, if they were working with a notario, then they may or may not have gotten good advice on that. There's a specific application. There's a supplemental application that goes along with the I-485 application that's specific for people who are applying for. And does it refer to the December 21st date? I'm not sure, Your Honor. I haven't. It's not in the record. The other thing that is in the record is the biographical data form that any applicant for adjustment of status has to fill out. It's the G-325A. And in that section, a person has to submit when any time out of the United States and everywhere that they were living. And that indicates that the government... The difficulty that I have with the government's argument is this. If these folks were not aware that particular dates in December were critical and they were anxious not to perjure themselves in any way or to overstate what they knew and didn't know in 2004 about when they left the United States in 2000, then it seems to be quite reasonable that somebody would say, gee, I know I left in December, but I don't know when. And that would be very reasonable to say, I can't tell you whether it was December 26th or whether it was December 31st. But either of those dates and anything in between would qualify them here. But if they were trying to pinpoint a date, somebody trying to be earnest and honest with the government would have to say, I don't know. Now, if the government official doesn't say, do you know whether you were here on Christmas Day? That's a very distinctive date in our memories and might have elicited a very different response from them. Instead, it looks like they just answered... The office was only written down very generally, 12-2000, and then it gets translated later on to they left on December 1st, which is not what they said. I'm not sure what the question would be. The question is that it looks like they've answered very honestly, depending on what the form of the questions were. I'm not sure why we should be reading this record against them. Once they're aware that December 21st is a critical date and they come forward with affidavits from various people saying, we were present for Christmas. We can't tell you what date we left after Christmas, but we do know we were here on Christmas Day of 2000. That would satisfy our proof of showing that we were here on December 21st of 2000. Also, there were affidavits from the mother-in-law who said they were there and ate her pumpkin pie or whatever.  The mother-in-law states that they moved in with her sometime in the beginning of December 2000, and then it just says they spent Christmas with us. That's it. She doesn't even give a date. The judge was concerned about the affidavits because nobody was there. So you want to read Christmas just as a season and therefore not as a particular day of the month? Yes. That's a pretty tight reading of the term Christmas. It's the petitioner's burden of proving and documenting that they were here on December 21st, 2000. The point of the expansion of the Life Act amendments was to allow people on that particular date that the statute was passed, that it was amended, people that were here could benefit from this law that otherwise only applied to people who were here before that time. So it was not to encourage people who were not in the United States to simply cross in illegally and then try to apply for benefits. So this is something that has to be documented, and it is the petitioner's burden. But there's no dispute that they were in the United States prior to December 21st, 2000. I think that continues to be a dispute because the immigration judge found that they were not credible in terms of their testimony as to any of the dates that they were here. So the government questions whether they were here in November of 2000? The government's not prepared to concede that they were here at any of the times that they submitted they were here between November and December of 2000 because, as the IJ found, there was simply no documentation. They had nothing to show that they had rented an apartment in either November or December of 2000, no receipts, no credit cards. The petitioner's wife could not remember what bank she had belonged to in November or December of 2000, so she had no documentation of any of those things. And I think it was reasonable for the judge to draw an adverse credibility finding and to find that they had not met their burden. Well, I don't think perhaps there wasn't adequate evidence, but it would seem that rather than an adverse credibility finding, these people were being honest. You know, I don't remember. That could be, Your Honor. However, it's the burden is on the petitioner to demonstrate. That may be, but I was just addressing the question of credibility. I understand. Is there any difficulty? Did the Board apply the wrong Act, Real ID, inappropriately? We can see that in terms of credibility and inconsistencies in testimony, the Board did apply post-Real ID Act standards. However, we would contend that this is we submit that this was harmful error because it was an alternative finding by the Board. And, in fact, the Board said that this was not a minor inconsistency, and what I would say to that is that in terms of asylum, a date might seem like an inconsistent detail to remember in terms of credibility. But in this case, as the Board found, the date was critical to establishing. So what is the inconsistency? The inconsistency was that to the DHS officer, there was no recollection whatsoever when. Well, you've got a pretty thin record on that one. We have a handwritten note that says left in 12-2000. Now, that could be December 1st, or it could be December 31st. And some of those dates qualify them for this program, and some of them don't. We also have an admission, Your Honor, in the NTA itself that says, Honor, about December 1st, 2000, I left the United States and didn't return to the United States until June of 2001. And then not until we get to the testimony before the immigration judge is it discovered that they were, in fact, here or allegedly here at Christmas. So that's where the inconsistency lies. So the inconsistency really is between the NTA and not between the I-185 and their testimony. I believe there are inconsistencies there in the fact that there's no detail in terms of when they left the United States and then with the IJ. That doesn't make it inconsistent. It's perfectly consistent. The inconsistency goes to the testimony itself. It's just not specific enough. On the one hand, the testimony before a DHS officer says, I don't remember at all. And then the testimony before the IJ is that, oh, I remember. It was after Christmas. That's where the inconsistency is. If there are no further questions, I would just conclude by saying that the record evidence does not compel the conclusion that the petitioner's med is burden of proof and, therefore, the petition's review should be denied. Okay. Thank you, Ms. Browning. Mr. Markey, I think you reserved some time. Nothing further, Your Honor. Okay. We thank counsel for the argument, and Romero-Gonzalez v. Holder is submitted.
judges: Fletcher B. , Fernandez, Bybee